IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-00717-KMT

**LISA M. MATTHEWS AND MARK P. MATTHEWS**,

Plaintiff,

v.

**DOUGLAS COUNTY SCHOOL DISTRICT RE1,**

Defendant.

---

**OPENING BRIEF**

---

Respectfully submitted,

JACK D. ROBINSON
Spies, Powers & Robinson, P.C.
950 South Cherry Street, Suite 700
Denver, Colorado 80246
303-830-7090
robinson@sprlaw.net

## STATEMENT OF JURISDICTION

The United States District Court for the District of Colorado has jurisdiction over this matter pursuant to 20 U.S.C. § 1415(i)(2)(A). The Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. §§ 1400 et seq. provides that any party aggrieved by the findings and decision of the state educational agency[1] has the right to bring a civil action in a district court of the United States without regard to the amount in controversy. *Id*. Here, Jacob U. ("Jacob") and his parents have been aggrieved by the findings and decision of the Colorado Office of Administrative Courts who conducted the due process hearing on behalf of the Colorado Department of Education ("CDE"), and have filed this civil action to have those findings and decision reviewed and reversed.

## STATEMENT OF THE ISSUES

Whether the Administrative Law Judge ("ALJ") erred in her conclusion that Douglas County School District RE 1 ("School District") failed to provide Jacob a free appropriate public education (FAPE) as required by the IDEA.

## STATEMENT OF THE FACTS

This is an appeal of a special education dispute under the IDEA regarding the School District's failure to implement Jacob's individualized education programs

---

[1] The Colorado Department of Education is the state educational agency for Colorado.

("IEPs") as written, failure to provide him an appropriate educational placement and program, and misidentification of his disabilities from September 2014 to the present. Further, the School District repeatedly failed to provide Parents prior written notice ("PWN") as required by the IDEA, which impeded their ability to participate in decisions regarding Jacob's education, and which prejudiced their ability to pursue this due process proceeding.

In the Fall of 2013, Jacob and his family moved from Arizona to Colorado and Jacob was enrolled as an 8th grade student in the School District. The School District did not adopt Jacob's IEP from Arizona, but placed him at Cimarron Middle School where they provided him "comparable services" to his prior IEP while the conducted an evaluation and developed a new IEP. ROA Vol. III, pp. 1030-1040.[2] The IEP fails to provide a statement of delivery of services based on peer-reviewed research to address Jacob's specific learning disability. *Id.* at p. 1034. The IEP states that Jacob will be educated in the general education environment at least 68.8% of his school day. *Id.* at 1031.

The School District conducted its evaluations in September 2013 and convened an IEP Meeting on October 13, 2013, in order to determine Jacob's eligibility under the IDEA and to develop an IEP. ROA Vol. III, pp. 1041-1061. The IEP Team

---

[2] Citations to the administrative record are to the volume number (ROA Vol. ___) and to the document control number(s) located at the bottom center of each page as affixed by the Office of Administrative Courts, e.g. OAC 001030.

determined that Jacob qualified as a child with a disability under the IDEA with "specific learning disability," i.e., dyslexia and an "other health impairment," i.e., ADHD. The IEP Team specifically determined that Jacob <u>was not</u> eligible as a child with an "intellectual disability." *Id.* at pp. 1062-1065. An IEP was developed based on Jacob's SLD and OHI eligibility. ROA Vol. II, pp. 582-613. However, the 10/13/2013 IEP failed to provide a statement of delivery of services based on peer-reviewed research to address Jacob's specific learning disability. *Id.* at p. 609. Instead, the IEP restricted Jacob's placement in the general education environment to 55.8% his school day. *Id.* at 611.

Without prior written notice or consent from the Parents, the School District convened an IEP Meeting on December 17, 2013, where the School District unilaterally changed Jacob's eligibility to an intellectual disability, and developed a new IEP - with different goals and objectives - based on this new disability category. ROA Vol. III, pp. 1066-1102.

The School District convened an IEP Meeting on March 11, 2014 to determine Jacob's eligibility for extended school year services ("ESY") and discuss transition from middle school to high school. ROA Vol. II, pp. 708-743. A new IEP was developed at this meeting. *Id.* As evidenced by the goals and objectives (including baseline data points) that were identical to those contained in the 12/17/2013 IEP, Jacob made no progress on his IEP goals during the 2013-2014 school year.

*Compare* 12/17/2013 IEP Goals 1 to 9 at ROA Vol. III, pp. 1086-1092 with 03/11/2014 Goals 1 to 9 at ROA Vol. II, pp. 729-734.

Despite the fact that the IEP Team determined that Jacob qualified for ESY services the Summer of 2014, based on evidence of significant regression of learned skills during breaks and significant time necessary to recoup those skills, the School District never provided Jacob ESY services. *See Id.* at pp. 738-740.

Concerned about the School District's misapprehension of Jacob's learning disabilities and Jacob's demonstrated lack of academic progress during the 2013-2014 school year, the Parents had Children's Hospital of Colorado perform an independent educational evaluation ("IEE") of Jacob. *Id.* at pp. 493-501.  The IEE found that Jacob suffered from specific learning disabilities in the areas of reading writing and math *Id.* at pp. 498-499. In order to appropriately address these specific learning disabilities, the IEE recommended specific specialized instruction utilizing Orton-Gillingham programming.[3]  *Id.*  The IEE also recommended a change in Jacob's educational placement and provision of special education services and supports for Jacob.  *Id.*

---

[3] Orton-Gillingham is a learning program based on peer-reviewed research that includes a "linguistic-phonetic approach [towards reading] with an emphasis on teaching the student to learn how to decode words." *See Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F.Supp. 501, 505 n. 4 (E.D.N.Y.1996). It is designed to "enhance a dyslexic individual's capacity to read, write, and spell." *Pascoe v. Washingtonville Cent. Sch. Dist.*, 1998 WL 684583, at *1 (S.D.N.Y. Sep.29, 1998).

The Parents presented the IEE Report to the School District in October 2014 and requested an IEP Meeting to revise Jacob's IEP in conformance with the proposed placement and program changes called for in the IEE. *Id.* at p. 581. The School District failed to convene an IEP Meeting and failed to properly consider the IEE Report, including the proposed changes to Jacob's educational placement and changes to the provision of a free appropriate public education to Jacob. The School District failed to provide the Parents written notice as required by the IDEA regarding the basis for its decision to reject the IEE recommendations and proposed changes.

Due to the School District continued failure to provide Jacob an appropriate education and its refusal to consider and adopt the recommendations proposed in the IEE Report, the Parents filed a due process complaint on March 5, 2015. ROA Vol. I, pp. 3-101. The School District, not having already provided prior written notice about the actions and inactions alleged in the due process complaint, failed to file an answer in conformance with the IDEA to the complaint.

The administrative record contains virtually no education records for the 2014-2015 school year. The Parents were provided no reports on Jacob's progress on his goals and objectives until the very end of the 2014-2015 school year. ROA Vol. II, pp. 759-770. Even then, there was no discernable or measurable progress reported for the 2014-2015 school year, and what little information was provided evidenced that Jacob had not made progress on his IEP goals during the school year. *Id.*

The School District scheduled an IEP Meeting for March 9, 2015, yet failed to provide the required written notice of meeting and failed to provide Jacob's education records, per the Parents' request, prior to the meeting. *See* ROA Vol. II, p. 428. The Parents communicated to Nancy Ingalls, Special Education Director for the School District that they could not attend the IEP Meeting without Jacobs' education records. *Id.* Ms. Ingalls did not respond to this communication and did not provide Jacob's education records and it is believed that no IEP Meeting took place on March 9th - despite the fact that there is an IEP that was backdated to 03/09/2015.[4] ROA Vol. III, pp. 1139-1166.

The Parents informed the School District that they could not competently or meaningfully attend an IEP Meeting to develop an IEP for Jacob absent receipt of Jacob's education records. Despite repeated requests, the School District failed to provide Jacob's education records.

By letter dated April 1, 2015, Ms. Ingalls advised the Colorado Department of Education that the School District did not yet have anyone trained in Orton-Gillingham, but intended to have someone from the School District trained and that "Once this team member is trained in Orton-Gillingham they will begin to provide services, as outlined in the IEP . . . ." ROA Vol. II, p. 1026.

---

[4] The 03/09/2015 IEP specifically states that an IEP Meeting was convened but was discontinued because the Parents were not in attendance. ROA Vol. II, p. 1163. It appears that the IEP was actually developed a meeting held without the Parents present on May 21, 2015. *Id.*

By email dated April 17, 2015, Rob Ross, General Counsel for the School District, wrote the Parents that:

> We [the School District] are committed to incorporating the Children's hospital recommendations with regard to Jacob's educational needs that can be served in the school setting, and will have a staff member trained to implement the strategies recommended by Children's for reading.

*Id.* at p. 579.

The 03/09/2015 IEP expressly adopts the specialized instruction recommendations contained in the September 2014 IEE report, including the provision of Orton-Gillingham reading instruction. ROA Vol. III, p. 1148. In pertinent part, the IEP provides: "Recommendations from the Children's Hospital report will be incorporated into the accommodations and services for Jacob." *Id.*

However, the School District never had anybody trained in Orton-Gillingham instruction (and to this date has nobody) and, therefore, is incapable of implementing the 03/09/2015 IEP. In its answer to the due process complaint, the School District admitted that it had no teachers qualified to provide Orton-Gillingham. ROA Vol. I, pp. 125-126.

Because the School District was unable to provide Jacob the specialized learning instruction that was required in his IEP, the Parents informed the School District that they were going to privately provide those special education services in reading, writing, and math, and seek reimbursement from the School District in the

pending due process proceeding. Since the beginning of the 2015-2016 school year, the Parents have privately paid the costs associated with the delivery of specialized instruction to Jacob in reading, writing, and math.

A due process hearing was held before an Administrative Law Judge ("ALJ") with the Colorado Office of Administrative Courts on November 10, 12, and 13, 2015. The Parents represented themselves and the School District was represented by counsel. The ALJ issued her Agency Decision on December 31, 2015, finding in favor of the School District. The Parents timely filed this civil action, *pro se*, to appeal the Agency Decision and subsequently retained counsel to assist in the appeal.

## ARGUMENT

### I.    STANDARD OF REVIEW AND BURDEN OF PROOF.

Judicial review in IDEA cases differs substantially from judicial review in other agency actions which provide for a highly deferential standard of review. *Murray v. Montrose County Sch. Dist. RE-1J*, 51 F.3d 921, 927 (10th Cir. 1995). "The court does not use the substantial evidence standard typically applied in agency decisions, 'but instead must decide independently whether the requirements of the IDEA are met.'" *Id.*, *quoting Board of Educ. v. Illinois State Bd.*, 41 F.3d 1162, 1167 (7th Cir. 1994).

Under the IDEA's standard of review, the district court must independently

review the evidence contained in the administrative record and decide, based on a preponderance of the evidence, whether the requirements of the IDEA are met. 20 U.S.C. § 1415(i)(2). In so doing, the court gives "due weight" to the hearing officer's findings of fact, which are considered prima facie correct. *Murray*, 51 F.3d at 927, n.11.

Because the Parents challenge the adequacy of the School District's IEP, they have the burden of persuasion on the issues on review. *Shaffer v. Weast*, 546 U.S. 49 (2005).

## II.   THE REQUIREMENT OF A FREE APPROPRIATE PUBLIC EDUCATION.

The IDEA is a comprehensive statute enacted to ensure that all children with disabilities have access to "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). A FAPE is defined as "special education and related services . . . provided in conformity with an individualized education program." 20 U.S.C. § 1401(9). The IDEA contains both extensive procedural requirements designed to ensure that an IEP is properly developed for each child, and that parents have significant involvement in the educational decisions involving their children, as well as substantive requirements designed to ensure that each child receives the "free

appropriate public education" mandated by the IDEA. *Murray*, 51 F.3d at 925.

The IEP is the basic mechanism through which the school district's obligation of providing a FAPE is achieved. *Id.* The IEP must be in the form of a written document. *Burilovich v. Lincoln Consolidated Schools*, 208 F.3d 560 (6th Cir. 2000). This formal written offer requirement is not merely technical, but rather serves the important purpose of creating a clear record of the educational placement and other services offered to the parents. *See Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1526 (9th Cir. 1994). The written offer not only helps to eliminate factual disputes between the school district and parents about proposed placements, but also "greatly assists parents in presenting complaints with respect to any matter relating to the . . . educational placement of the child." *Id.* (internal quotation marks omitted). The written offer requirement should therefore be enforced rigorously. *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 768 (6th Cir. 2001).

An IEP is designed as a package. That is, it must target "all of a child's special needs," *Burlington v. Department of Educ.*, 736 F.2d 773, 788 (1st Cir. 1984), whether they be academic, physical, emotional, or social. *See Roland M. v. Concord School Committee*, 910 F.2d 983, 992 (1st Cir. 1990); U.S. Dep't of Educ., Notice of Policy Guidance, 57 Fed. Reg. 49,274 at 49,275 (1992)(stating that an IEP must address "the full range of the child's needs").

The IEP must be tailored to the unique needs of the disabled child, and must

be reasonably calculated to provide 'effective results' and 'demonstrable improvement' in the educational and personal skills identified as special needs. *See* 34 C.F.R. 300(a)(3)(ii); *Lenn v. Portland School Committee*, 998 F.2d 1083 (1st Cir. 1993), *citing Burlington*, 736 F.2d at 788. Naturally, "effective results" and "demonstrable improvement" should be measured in light of the student's individual potential.

## III.   THE COURT SHOULD AFFORD THE AGENCY DECISION'S FINDINGS OF FACT NO WEIGHT.

The issue of whether a school district violates the IDEA by failing to provide a free appropriate public education is a question of fact, and a district court is to independently make factual findings as to the provision of an appropriate education. *County Sch. Bd. v. Z.P.*, 399 F.3d 298 (4th Cir. 2005). While the district court must ordinarily give "due weight" to the hearing officer's findings of fact, when those factual findings are entirely conclusory or unsupported by the administrative record, the district court should afford them no weight and must decide the case de novo. *J.P. v. County Sch Bd. Of Hanover County*, 447 F.Supp. 2d 553, 566 (E.D. Va. 2006).

Here, the findings of fact contained in the Agency Decision are almost entirely based on the procedural record of the case and fails to include expert testimony that directly challenged School District's representation of Jacob's disabilities and

academic needs.  The Agency decision includes only two statements of testimony - both of which are inaccurate:

> 20.   Ms.[Corey] Pollard[5] credibly testified that J.U. did not qualify for a diagnosis of dyslexia.

> 21.   Ms. Pollard credibly testified that she believed a school district could provide appropriate services to J.U. with appropriately trained professionals.

ROA Vol. I, pp. 403-404.

The hearing transcript reflects that Ms. Pollard did not testify that Jacob did not have dyslexia or that his learning disability did not require specialized instruction that was specific to children with dyslexia.  Rather, Ms. Pollard's testimony demonstrated the School District was unable to provide the placement and program necessary to address Jacob's learning needs:

- Ms. Pollard explained her findings and her discrepancy models for the School District's intellectual disability measurements and that Jacob's 20 to 25-point discrepancy showed that there was a gap between his intellectual capacity to his academic scores.  ROA Vol. 4, 25:3-26:6;

- Ms. Pollard testified that Jacob's cognitive capacity is significantly higher than his academic scores in reading and math. *Id.* at 27:12-28:6;

- Ms. Pollard selected specialized instruction in Orton-Gillingham to address Jacob's specific learning disability because it addressed all of Jacob's deficits in reading, writing and math. *Id.* 26:26-27:11;

---

[5] Ms. Pollard, a Learning Specialist at Children's Hospital, conducted the IEE of Jacob and testified on behalf of the Parents at the due process hearing.

-   Ms. Pollard testified that the School District's Wilson Reading Program would not be appropriate for Jacob unless it was supplemented, and would not address Jacob's math deficits, and would only partially address his writing deficits. *Id.* 35:25-36:2;

-   Ms. Pollard testified that she was aware the School District offered a Wilson Reading Program but that the program would need trained staff and specific modifications to the program to address Jacobs intellectual ability (neither of which the School District could provide). *Id.* 33:17-34:11.;

-   Ms. Pollard emphasized that Jacob needs intensive multisensory systematic instruction in both reading and math everyday.  Further that Jacob should have one-one instruction time.  *Id.* 52:8-53:9;

-   Ms. Pollard testified that through direct specialized instruction utilizing Orton-Gillingham, that was provided at the Parents' expense, Jacob made substantial academic progress.  *Id.* 45:20-46:10; 49:11-50:6.

While there is no conclusive evidence in the administrative record when or if the School District even implemented the Wilson Reading Program, and despite expert testimony that the Wilson Reading Program was not appropriate for Jacob, the ALJ relied upon this "program" to conclude that the School District was providing Jacob an appropriate education.   Such program was never agreed to by the Parents and was never incorporated into any of Jacob's IEPs.   Accordingly, it was inappropriate for the ALJ to rely on educational programming outside of the four-corners of the IEP to determine FAPE. *See Sytsema v. Academy Sch. Dist. No. 20,*

538 F.3d 1306, 1311 (10th Cir. 2008)("[W]e conclude that when analyzing the substantive compliance of an IEP, the court should restrict [its] examination to the written document.").  Here, because the ALJ did not so restrict its examination of the IEP, its determination that the School District provided a FAPE should be reversed.

IV.   **THE SCHOOL DISTRICT'S PROCEDURAL AND SUBSTANTIVE VIOLATIONS OF THE IDEA ESTABLISH THAT THE SCHOOL DISTRICT FAILED TO PROVIDE JACOB A FAPE.**

A.   **Procedural Violations.**

1.   **Failure to Provide Parents With Prior Written Notice or Respond to the Due Process Complaint in Compliance With the IDEA.**

The IDEA requires a school district to provide parents a specific and detailed written response within 10 days of receiving a parents' due process complaint.  34 C.F.R. § 300.508(e).  The substance of the School District's Response must include:

1.   An explanation of why the agency proposed or refused to take the action raised in the due process complaint;

2.   A description of other options that the IEP Team considered and the reasons why those options were rejected;

3.   A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and

4.   A description of the other factors that are relevant to the agency's proposed or refused action.

34 C.F.R. § 300.508(e)(i)-(iv).

The United States Supreme Court recognized the importance of this provision as a critical means to ensure the parents' rights under the IDEA and to ensure that the school district "bears no unique informational advantage." *Schaeffer v. Weast*, 546 U.S. 49, 61 (2005). In *Schaeffer*, the Court recognized that the procedural rights of parents that the school district was required to safeguard were specifically designed to address the "natural advantage" school districts had in information and expertise. *Id.* at 60. In this regard, the Court found that:

> [I]n 2004, Congress added provisions requiring school districts to answer the subject matter of a complaint in writing, and to provide parents with the reasoning behind the disputed action, details about the other options considered and rejected by the IEP team, and a description of all evaluations, reports, and other factors that the school used in coming to its decision. (citations omitted).

*Id.* at 61.

Here, the School District summarily denied the claims raised in the due process complaint, but staunchly refused to provide the Parents a Response with the information required by the IDEA. *See* ROA Vol. I, pp. 125-126. The Parents filed a motion to dismiss, or in the alternative, a motion for summary judgment based on the School District refusal to submit a compliant Response. *Id.* at pp. 141-151. Without explanation, the Court denied the motion for summary judgment and did not

otherwise require the School District to file a Response in compliance with the IDEA. *Id.* at p. 233.

The School District's failure to file a Response to the complaint prevented the Parents from meaningfully participating in the IDEA's resolution process and prevented the Parents from properly and fully preparing for the due process hearing. The Supreme Court imposed the burden of proof on parents only on the condition that the School District complied with all procedural rights owed to the parents. Here, the School District violated a critical right of the Parents, thus requiring a reversal of the Agency Decision.

### 2.    Failure to Produce Education Records.

The IDEA provides that a school district must comply with a parent's request for their child's education records "before any meeting regarding an IEP, or any [due process] hearing...or resolution session pursuant to 300.510." 34 C.F.R. §300.613(a).

In *Amanda J. v. Clark County. Sch. Dist.*, 267 F.3d 877, 882 (9th Cir. 2001), the court described the school district's refusal to produce the child's education records as "driving a stake into the heart of IDEA," and deprived the parents from meaningful participation in the IEP process, concluding that this "the procedural violation alone was a denial of FAPE."

Here, despite repeated written requests, the School District never provided the

Parents' Jacob's education records until just before the due process hearing. Lisa Matthews testified that the refusal to allow access to Jacob's education records prejudiced the Parents' ability to meaningfully participate in Jacob's IEP Meetings and to have the Parents' educational expert, Julie Hagey-Hancock, involved in the IEP process. ROA Vol. Vol. IV, pp. 155:5-156:25.

The administrative record establishes that the Parents made repeated demands for Jacob's education records and informed the School District that they could not meaningfully participate in Jacob's IEP Meetings without them. The School District failed to timely provide the records and held the IEP Meetings anyway - without the Parents present.

### 3. Failure to Convene An IEP Meeting After Receipt of the Independent Educational Evaluation Report.

The IDEA requires that if a school district is presented with an independent educational evaluation, the school district must convene an IEP Meeting to consider the results of the evaluation and make necessary decisions with respect to the provision of FAPE for the child. 34 C.F.R. § 300.502(c)(1).

The Children's Hospital IEE Report was presented to the School District in October 2014. The School District never argued that the IEE did not meet its evaluation criteria and, in fact, later adopted the IEE it in its entirety in Jacob's 03/09/2015 IEP.

However, in the Fall of 2014, after the receipt of the IEE, the School District never convened an IEP Meeting to consider the IEE results, and never amended Jacob's current IEP to include the recommendations provided therein in the provision of a FAPE for Jacob.  The School District's later adoption of these recommendations in the IEP drafted at the conclusion of the school year - despite having this information all along - evidences the impropriety of the School District's actions and the inappropriateness of Jacob's educational placement and program during the 2014-2015 school year.

B.   **Substantive Violations**

1.   **School District's Failure to Provide Jacob a FAPE During the 2014-2015 School Year.**

As referenced above, the Parents presented the School District with the Children's Hospital IEE Report at the beginning of the 2014-2015 school year.  The School District failed to convene an IEP Meeting, revise Jacob's IEP, or adopt the accommodations and specialized instruction contained in the Report.  As a result, Jacob did not have an appropriate IEP in place and was not provided the special education services and supports necessary to provide him a FAPE.

The lack of an appropriate IEP resulted in Jacob's failure to make appropriate progress on his IEP goals for the 2014-2015 school year.  The administrative record is devoid of any evidence that Jacob made meaningful or measurable progress on his

IEP goals during the 2014-2015 school year.

It was not until after the end of the 2014-2015 school year that the School District admitted that Jacob required specialized instruction utilizing Orton-Gillingham and the services recommended by the IEE Report in order to receive an appropriate education.  However, by that time, Jacob had lost an entire year of education.

### 2.      School District's Failure to Implement Jacob's 03/09/2015 IEP Denied Jacob a FAPE.

The Agency Decision focuses solely on the issue of whether the 03/11/2014 IEP was reasonably calculated to provide Jacob a FAPE under the standard set forth in *Thompson R2-J Sch. Dist. v. Luke P.*, 540 F.3d 1143 (10th Cir. 2008) and *Endrew F. v. Douglas County Sch. Dist. Re-1*, 798 F.3d 1329 (10th Cir. 2015).   The ALJ completely ignores the Parents' argument that the School District wholly failed to implement the material elements of the 03/09/2015 IEP - despite the IEP's adoption of the accommodations and recommendations contained in the IEE Report.

As recognized by the Tenth Circuit, IEP is a "program," consisting not just of the written document, but also of the the subsequent implementation of that document. *O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233*, 144 F.3d 692, 702 (10th Cir. 1998).   According to the Tenth Circuit, "While we evaluate the adequacy of the document from the perspective of the time it is written, the

implementation of the program is an on-going, dynamic activity, which obviously must be evaluated as such." *Id.*

The failure to implement a material or significant portion of an IEP results in a denial of FAPE. *See Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 822 (9th Cir.2007) ("[A] material failure to implement an IEP violates the IDEA."); *Neosho R-V Sch. Dist. v. Clark*, 315 F.3d 1022, 1027 n. 3 (8th Cir.2003) ("We cannot conclude that an IEP is reasonably calculated to provide a free appropriate public education if there is evidence that the school actually failed to implement an essential element of the IEP that was necessary for the child to receive an educational benefit.").

It is undisputed that the 03/09/2015 IEP adopted the accommodations and services, including the utilization of Orton-Gillingham, set forth in the IEE Report. These services and support were a necessary and material component of this IEP and were services and supports necessary to provide Jacob a FAPE.  It is equally undisputed that the School District never implemented these aspects of the IEP, never provided these services and supports and admitted that they did not have the ability to provide these services and supports.  Beginning in August 2015, the Parents began providing these services to Jacob privately at their expense.

The failure of the School District to implement material portions of the 03/09/2015 IEP constitutes a *per se* violation of the IDEA and substantive denial of a FAPE.

### 3.     School District's Failure to Provide ESY Services in 2014 and 2015.

The IDEA provides for the provision of extended school year (ESY) services if the child (among other factors) evidences regression in learned skills during extended breaks and requires an unreasonably long period of time to relearn those skills. *See* 34 C.F.R. § 300.106. The IDEA provides that the school district must ensure that ESY services are available as necessary to provide FAPE, that the services are individualized according to the child's needs and are not limited in type, amount or duration. *Id.* ESY services also must be provided at no cost to the parents. *Id.*

According to Jacob's 03/11/2014 IEP, Jacob experienced severe regression on his IEP goals and objectives during breaks and required an unreasonably long period of time after the break to relearn previously mastered skills. ROA Vol. II, p. 738, 740. Thus, the IEP Team determined that Jacob was eligible for ESY services for Summer 2014. *Id.*

However, the School District never developed a plan for ESY services and never provided Jacob ESY services for the Summer of 2014.

According to Jacob's 03/09/2015 IEP, Jacob experienced severe regression on his IEP goals and objectives during breaks and required an unreasonably long period of time after the break to relearn previously mastered skills. ROA Vol. III, p. 1164-1166. Thus, the IEP Team determined that Jacob was eligible for ESY services for

Summer 2015.  *Id.*

Again however, the School District never developed a plan for ESY services

and never provided Jacob ESY services for the Summer of 2015.

The administrative record reflects that the Parents presented evidence that they

privately provided Jacob's ESY services through a private tutor for the summer of

2015 because of the School District's failure to do so.  The record shows that Jacob

received private tutoring services 5 times per week at $50.00 per day during the

Summer of 2015 at a cost to the Parents of $13,940.66.  ROA Vol. II, p. 999.  While

the ALJ participated in the questioning of the Parents' witnesses about ESY services,

the Agency Decision is devoid of any comment, analysis or determination.

Failing to offer or provide ESY services for the summers of 2014 and 2015

denied Jacob's right to FAPE.  *See S.S. v. Howard Rd. Acad.*, 585 F.Supp.2d 56, 63

(D.D.C.2008)("[F]ailure to provide S.S. with ESY services during the summer of

2007 constituted a material failure to implement his IEP and thus a denial of a

FAPE.").

**V.   THE PARENTS ARE ENTITLED TO REIMBURSEMENT OF
EDUCATIONAL EXPENSES INCURRED AND JACOB IS ENTITLED
TO COMPENSATORY EDUCATIONAL SERVICES AS RESULT OF
THE SCHOOL DISTRICT'S DENIAL OF A FAPE FROM OCTOBER
2014 TO THE PRESENT.**

The IDEA provides that aggrieved parties to a due process proceeding may

appeal to a federal court, 20 U.S.C. § 1415(i)(2)(A), which "shall grant such relief as the court determines is appropriate," *Id.* § 1415(i)(2)(C)(iii). This relief may require awarding "compensatory" special education services to make up for past inadequacies, or reimbursing parents for payments they incurred for private tutoring while the public school was failing to provide a FAPE. *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993); see 20 U.S.C. § 1412(a)(10)(C)(ii).

The Parents are requesting an order from this Court for compensatory educational services for the 2014-2015 school year. The Parents are also requesting reimbursement of the costs associated with providing Jacob private tutoring services during the Summers of 2014 and 2015(ESY services) and from August 2015 to the present.

## CONCLUSION

Based on the foregoing reasoning and authority Parents request that the Court reverse the Agency Decision and enter an order awarding Parents the costs associated with providing Jacob private tutoring services during the Summers of 2014 and 2015(ESY services) and from August 2015 to the present; an order directing the School District to directly pay for these private services until such time as the School District can demonstrate that it is able to properly provide these services; and an order for compensatory services for the 2014 - 2015 school year.

Respectfully submitted on March 20, 2017,

**SPIES, POWERS & ROBINSON, P.C.**
*/s/  Jack D. Robinson*

_____

 Jack D. Robinson, #22037
950 South Cherry Street, Suite 700
Denver, Colorado 80246
Telephone: (303) 830-7090
Facsimile:  (303) 830-7089
**Attorneys for Plaintiffs Lisa M. Matthews and Mark P. Matthews**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 20, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Stuart Stuller
Caplan and Earnest
1800 Broadway, Suite 200
Boulder, CO 80302
*attorney for Defendant*

*s/ Ursula Honigman*
_____